materials, electronic information, credit cards bearing Williston's name or any and all other property belonging to Williston currently within your possession, custody or control.

5. Confidential Information

You and Williston agree that the terms of this Separation Agreement shall remain confidential and shall not be disseminated to any individual or entity either directly or indirectly at any time without the written consent of Williston. To the extent that you have acquired information, data, business practices or procedures or other information regarding Williston, of a confidential or proprietary nature, you agree not to disclose or use or otherwise make available that information at any time, for any purpose whatsoever.

6. Non-disparagement

You agree not to make any oral or written communication to any person or entity which has or may have the effect of damaging the reputation of, or otherwise working in any manner whatsoever to the detriment of Williston at any time following the execution of this Agreement.

7. Waiver and Release

In exchange for the good and valuable consideration detailed in this Agreement, you hereby waive any claim that you may have for employment or reemployment by Williston at any time in the future. You hereby release and forever discharge Williston, its trustees, officers, employees and agents (collectively, the "Released Parties") from any and all claims, demands and liabilities whatsoever of every name and nature with respect to your employment relationship with Williston and/or the terms, conditions or termination of your employment relationship with Williston, which you now have or ever had against any of the Released Parties. This release includes any claims for alleged lost wages or benefits, compensatory damages, punitive damages, equitable relief or any other forms of damages or relief. This release includes, without limitation, all common law claims, including claims in contract or tort, breach of contract, wrongful discharge (including claims for constructive discharge), intentional or negligent infliction of emotional distress, misrepresentation, invasion of privacy, interference with prospective economic advantage, interference with contractual relations, defamation, negligence, or breach of any covenant of good faith and fair dealing. You specifically release and forever discharge Williston from any and all claims based upon any allegation of unlawful employment discrimination under any federal, state or local law, regulation or ordinance. This release includes a waiver of any rights or claims that you may have or claim to have under any local, state or federal law, statute, public policy, order, ordinance, or regulation. You represent, warrant, covenant and agree that you have not and will not file any complaints or charges against Williston or any of the other Released Parties with any local, state or federal agency or court for any purpose whatsoever.

8. Miscellaneous

   A. You and Williston agree that this document and any matters concerning this Agreement will be regarded as privileged communication between you and Williston and you will not disseminate or release this Agreement or any such matters by publication of any sort, in any manner or means, to any person whatsoever.

74708-1

2

B. In the event that any provision of this Agreement shall be held invalid, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

C. This Agreement constitutes the entire agreement between the parties hereto and no change or modification of this Agreement shall be valid unless made in writing, signed by all parties hereto.

D. You and Williston acknowledge and agree that neither party has made any representations to the other party other than those specifically set forth in this Agreement.

E. You acknowledge and agree that you are entering into this Agreement knowingly and voluntarily and further acknowledge that you have read and understand the language of this Agreement. You further acknowledge that you have been given adequate time and opportunity to consider this Agreement prior to execution of the Agreement.

F. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

If the foregoing correctly sets forth your understanding of the terms of our Agreement, please sign this letter in the appropriate space provided below and return a fully executed copy to me. This agreement, including the severance pay, will be in effect until the close of business on April 15, 2003. If not accepted by that data and time, this agreement will be considered withdrawn.

Signed as a sealed instrument as of the date first written above.

Very truly yours,

*[signature]*
The Williston Northampton School
By Brian R. Wright

I hereby agree to the foregoing:

_____
Jane B. Bergenn

74708-1                                                   3

B. In the event that any provision of this Agreement shall be held invalid, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

C. This Agreement constitutes the entire agreement between the parties hereto and no change or modification of this Agreement shall be valid unless made in writing, signed by all parties hereto.

D. You and Williston acknowledge and agree that neither party has made any representations to the other party other than those specifically set forth in this Agreement.

E. You acknowledge and agree that you are entering into this Agreement knowingly and voluntarily and further acknowledge that you have read and understand the language of this Agreement. You further acknowledge that you have been given adequate time and opportunity to consider this Agreement prior to execution of the Agreement.

F. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

If the foregoing correctly sets forth your understanding of the terms of our Agreement, please sign this letter in the appropriate space provided below and return a fully executed copy to me. This agreement, including the severance pay, will be in effect until the close of business on April 15, 2003. If not accepted by that data and time, this agreement will be considered withdrawn.

Signed as a sealed instrument as of the date first written above.

Very truly yours,

*[signature]*

The Williston Northampton School
By Brian R. Wright

I hereby agree to the foregoing:

_____
Jane B. Bergenn

74708-1                                                    3



March 31, 2003

Memorandum to:   Jane Bergenn

From:   Gloria A. Granfield, Director of Human Resources

Re:   Exiting Benefit Information

---

The following outlines your exiting benefit information. Please review it carefully and contact me directly at 413.529.3236 with any questions you may have.

*Compensation* – Your final day of employment was Thursday, March 27, 2003. You have received your normal regular compensation for the month of March on March 15, 2003. In addition, you will receive a separate check for payment for your six weeks of severance pay. All regular tax deductions will be taken from this check.

- *Health & Dental Insurance* - With all normal insurance deductions coming out of your March pay, you will be covered for both health and dental insurance through **April 30, 2003**. On **May 1, 2003**, you will be eligible for COBRA, the federally mandated insurance continuation program. You will receive all COBRA information directly, under separate cover, from our insurance brokers, BFP Associates.

- *Uninsured Medical* - Uninsured medical deductions ceased with your March check. Contact BFP Associates at 413.739.2352 to get information to submit receipts for reimbursement.

- *Life & Disability Insurance* - There is a provision for you to convert both your Life and Long Term Disability (LTD) Insurance from the group plan to an individual plan. If you are interested in pursuing this option, please call 1.800.421.0344 for LTD conversion information and 1.800.343.5406 for Life Insurance conversion information. Your school group insurance will end as of **March 27, 2001** and you have 31 days to make your conversion decision.

- *TIAA-CREF Pension* - Your TIAA-CREF contributions will be guaranteed through your March 2003 pay. Your contracts will remain intact. If you need any information regarding any benefit planning options please call the TIAA-CREF Benefit Counseling division at 1.800.842.2733.

- *Keys & Other School Property* – Arrangements will need to be made with Gloria Granfield to return all school-provided keys and any other school property. This will include all personal effects from your classroom areas as well.

EXHIBIT 6

Case 3:04-cv-30012-MAP   Document 1-4   Filed 01/21/2004   Page 5 of 11

Printed by: **Jane Bergenn**
Title: **Current Health Status and Questions**

Friday, March 14, 2003  2:49:18 PM
Page 1 of 2

---

Friday, March 14, 2003 8:53:29 AM
Message

From:   Jane Bergenn

Subject:   Current Health Status and Questions

To:   Gloria Granfield

Cc:   Brian Wright

---

I'm wanting to touch base with you regarding my current status of healing. In addition to taking my asthma medication, as prescribed by Dr. Oliver, for the past several days in hopes of speeding up my healing process I have been working with alternative health care and following a daily regime of serious body cleansing/detoxification. I feel this is helping me to return to my previous state of health (prior to the Nov. 15-20 kiln-firing). I intend to continue this detox for the rest of this vacation in hopes that this will enable me to be in my classroom upon return without the chest pain and headache I was experiencing for the two weeks prior to spring break.

Every time I've attempted to return to my classroom I've had minimal symptoms at first that progrssively escalated until I've had chest pain and headache that took several days to go away. When I spoke with Dr. Oliver on March 6 she stressed that I should not use the medicine to allow me to go into situations of exposure to lung irritants. Dr. Olive also reported that my March 4 pulmonary tests at Mass General Hospita lcontinued to diagnose for asthma with no significant improvement in my condition. Dr. Oliver said that I should stay away from exposures that are aggravating the imflammation of my airways or run the risk of developing multiple chemical sensitivities. This is upsetting to me. My desire is to continue to teach at Williston, (it felt great to be back with my students) yet I cannot jeopardize my health.

I'm still wondering if it is a matter of my body needing the necessary time to heal from the the initial exposure or if prompt attention to certain details, on the part of the school, could have made the difference in my capacity to function in my classroom. A few "loose ends" are :
the classroom walls and ceiling have not been sealed since the kiln incident,
the kiln has not been removed as Dr. Oliver requested,
the recommended AUSTIN air purifiers were never purchased, and
it took until late February for the process of cleaning and removal of exposed items to be complete.
Also, I'm wondering if the school has ever had an industrial hygenist examine the ventilation system in the Reed Center? While Jeff Tannatt has explained how the duct system works to bring in fresh air into the building, I, nevertheless, have continued to feel the need to get outside when I have my distressing symptoms. Please let me know if and when any investigation might have occured and any results obtained.
Thank you, Gloria, for your attention to these concerns.
I assure you I am doing everything in my power to facilitate my healing and will stay in touch with you about that.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

☐ FEPA
☐ EEOC

___M.C.A.D.___ and EEOC
(State or local Agency, if any)

**NAME** (Indicate Mr., Ms., or Mrs.): Jane Bergenn
**HOME TELEPHONE NO.** (Include Area Code): 413-529-2522
**STREET ADDRESS**: 116 Pleasant St. #11, **CITY, STATE AND ZIP CODE**: Easthampton, MA 01027
**COUNTY**: Hampshire

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

**NAME**: Williston Northampton School
**NO. OF EMPLOYEES/MEMBERS**: 100+
**TELEPHONE NUMBER**: 413-529-3000
**STREET ADDRESS**: 19 Payson Ave., **CITY, STATE AND ZIP CODE**: Northampton MA 01027

**NAME**: Gloria Granfield - HR - Dept.
**TELEPHONE NUMBER**:
**STREET ADDRESS**:
**CITY, STATE AND ZIP CODE**:

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es)):
☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ AGE ☒ RETALIATION ☐ OTHER (Specify)

**DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE** (Month, day, year): 7·23·03

**THE PARTICULARS ARE** (If additional space is needed, attached extra sheet(s)):

(See Attached)

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

_Jane Bergenn_

**NOTARY** - (When necessary to meet State and Local Requirements)
Expires 10/25/20__
I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

**SIGNATURE OF COMPLAINANT**: _Jane Berger_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year): 1/8/2003

Jane Bergenn –and– The Williston Northampton School, cond't

(See, MCAD charge docketed July 8, 2003)

1. I was terminated from my position as an art teacher March 31, 2003 after 19 years with Williston.
2. On April 18, 2003 my attorney wrote to Gloria Granfield in Respondent's human resources department requesting that I be reinstated and setting out several legal claims that could be lodged against the School including violation of M.G.L.A. c. 151B.
3. In conversations after this with Rob Kelly, middle school director, I was informed that I was not permitted to enter school property because in the words of Brian Wright, school headmaster, "I had a lawsuit against the School."
4. Deprived of the opportunity to attend graduation on May 31, 2003, even as a spectator, and to see former colleagues or students to explain why I would not be returning in the fall, I wrote the attached letter
5. My attorney received the attached reply from the School's attorney dated July 23, 2003.stating in pertinent part: . . . Williston will consider instituting a counterclaim or separate action against Ms. Bergenn for any and all damages incurred by the school as a result of Ms. Bergenn's defamatory comments and/or in interfering with the school's advantageous and economic relations . . "

Conclusion

I believe the above acts constitute unlawful discrimination in violation of M.G.L.A. c.151B Sec. 4(4).

Dear Former Colleagues,

It is with sadness that I am writing to all of you to say goodbye and to bring closure to what has been, for me, a physically and emotionally stressful school year. To address you as "former colleagues" sounds odd to my ear, but I have not been a Williston employee since late March when I was fired. My difficulties with the administration of the school began last November when, after doing a bisque firing of students' sculptures in my classroom studio in the Reed Center, I began to experience chest pains and burning sensations in my throat. Other debilitating symptoms followed. Under orders from my doctor, I was admitted to the emergency room at Cooley-Dickinson Hospital in Northampton and advised to see a pulmonary specialist.

I will spare you the gory details of my story. Very simply, I was eventually diagnosed as having *occupational asthma*. The pulmonary specialist saw my illness as causally related to irritants and sensitizers released into the air by a malfunction of the exhaust hood of the kiln in my classroom. I was unable to function as usual in my classroom due to recurring disabling symptoms. On March 27 I conducted my two drawing classes. By the beginning of the second class I felt sick (headache, chest pain and nausea) but continued to teach so that both classes would have equal information. I went home after the second class and called Rob Kelley. I explained that I was sick, and he said that he would arrange coverage for my afternoon class. On March 28, in a meeting with Susan Kennedy and Gloria Granfield, I proposed teaching a bookmaking project that could be accomplished outside of my classroom. They said they would present my proposal that afternoon at an administrative meeting. That evening I received a phone call from Deb Sherr telling me that my book idea was not approved. Two days later I received a "separation agreement" which terminated me for "job abandonment."

At this time I want all of you to know that I never abandoned my job. I have loved my students and my professional life at Williston for the past 19 years. I repeatedly attempted to return to my classroom. My doctor made it clear to me and to the administration that this would only exacerbate my symptoms unless the room was properly cleaned. My request for a temporary classroom set-up in another building was summarily dismissed by administration; requests for more adequate ventilation and for an evaluation of the system by an industrial hygienist were deemed unnecessary.

Given the ramifications these events have had on my personal and professional life, I am currently working with legal counsel in an attempt to settle this matter fairly. I have had to give up my apartment and community at Eastworks, and I have no idea if I will be able to find employment as an Art Teacher at age 61.

My heartfelt thanks to all of you who have been there with encouragement, compassion, support and rollicking good humor over the years. I will miss you.

Most Sincerely,

Jane

Jane Bergenn

## DOHERTY, WALLACE, PILLSBURY AND MURPHY, P.C.

PAUL S. DOHERTY
PHILIP J. CALLAN, JR
GARY P. SHANNON
ROBERT L. LEONARD
A. CRAIG BROWN
L. JEFFREY MEEHAN
JOHN J. MCCARTHY
DAVID J. MARTEL‡
WILLIAM P. HADLEY
BARRY M. RYAN
DEBORAH A. BASILE†
PAUL M. MALECK
CLAIRE L. THOMPSON
W. GARTH JANES**
GREGORY A. SCHMIDT
MICHAEL K. CALLAN*
MICHAEL D. SWEET‡
BERNADETTE HARRIGAN‡
BRENDA S. DOHERTY
MICHELE A. ROOKE
THOMAS E. DAY
KAREN K. CHADWELL*†
JOHN E. BONINI*

ATTORNEYS AT LAW
ONE MONARCH PLACE, SUITE 1900
SPRINGFIELD, MASSACHUSETTS 01144-1900

TELEPHONE (413) 733-3111

TELECOPIER (413) 734-3910
WWW.DWPM.COM
E MAIL: CTHOMPSON@DWPM.COM

ROBERT E. MURPHY
SAMUEL A. MARSELLA
MATTHEW J. RYAN, JR.
OF COUNSEL

DUDLEY B. WALLACE
(1900-1987)
LOUIS W. DOHERTY
(1888-1990)
FREDERICK S. PILLSBURY
(1919-1996)

† REGISTERED PATENT ATTORNEY
* ALSO ADMITTED IN CONNECTICUT
‡ ALSO ADMITTED IN NEW YORK
** ALSO ADMITTED IN DISTRICT OF COLUMBIA

July 23, 2003

**VIA TELECOPIER and REGULAR MAIL**

413-238-0224

John T. Leahy, Esq.
68 Thrasher Hill Road
P.O. Box 364
Worthington, MA 01098

Re: **Jane Bergenn**

Dear Attorney Leahy:

It was my understanding when we last spoke that you would be forwarding a copy of the complaint that you have filed with the MCAD on behalf of Ms. Bergenn. To date, I have yet to receive a copy of that complaint. Kindly telefax the same to me upon receipt of this letter.

I am enclosing a copy of a letter recently received by Williston's faculty and staff written by your client, Jane Bergenn. It has also come to our attention that Jane has discussed her dispute with Williston and, in our opinion, misrepresented the background to her separation from her position as art teacher. Ms. Bergenn's communications and misrepresentations have only served to further solidify Williston's decision not to reinstate her employment with the school.

Please be advised that Williston will consider instituting a counterclaim or separate action against Ms. Bergenn for any and all damages incurred by the school as a result of Ms. Bergenn's defamatory comments and/or her actions in interfering with the school's advantageous and economic relations in western Massachusetts. I hope that such a claim by Williston will not be necessary.

Very truly yours,

Claire L. Thompson

CLT/dlb:Enc.

189109-1

*This fact sheet was designed to help parties with cases that have been assigned or transferred to the Attorney Assisted Unit for investigation. If, after reading this, you still have questions call the attorney-assisted unit at the Commission. The following are answers to frequently asked questions by counsel:*

- Cases assigned or transferred to the attorney assisted unit occur only when there is <u>counsel representing both parties</u>. When counsel to one or both parties makes a written notice of withdrawal of representation from the case, the case will be automatically transferred to the Pro-Se Unit.

- All correspondence should be sent to the attorney investigator assigned to the case. In the event there is no attorney investigator assigned to the case, correspondence should be addressed to the Attorney Assisted Unit. Correspondence should **not** be sent to the Investigating Commissioner.

- All correspondence and documents sent by counsel **must be copied to all parties named in the action.** Counsel for parties are responsible for seeing to it that he/she have been copied on all documents.

- Each named Respondent must file a position statement within twenty one (21) days of receiving a formal charge of discrimination (even if there is a motion to remove the claim to state court). Each Respondent may be allowed **one**, twenty one (21) day extension upon the showing of good cause and <u>upon approval by the attorney assisted unit</u>. The Respondent is required to submit a confirming letter regarding the extension to all parties and the attorney assisted unit.

- Position statements must be <u>signed and affirmed</u> by a principal or person, other than counsel, authorized to act for Respondent. *(804 CMR 1.10(8)(e))*.

- Parties interested in resolving matters through mediation or arbitration should contact opposing counsel for agreement and send a <u>joint request</u> for an American Arbitration Association referral in writing to the assigned attorney investigator. *(804 CMR 1.10(3))*.

- Once the parties have received a position statement, the Commission shall issue a Pre-Determination Discovery Order pursuant to the new regulations authorizing parties to conduct limited discovery for a ninety (90) day period. Discovery is limited to fifteen (15) interrogatories, fifteen (15) requests for production of documents and six (6) hours of depositions. Parties are required to respond to interrogatories within forty five (45) days of receipt and within thirty (30) days for the production of documents. Both parties may jointly opt to waive out of conducting discovery (this must be done as a joint stipulation in writing). *(804 CMR 1.13)*.

- Discovery requests and responses should <u>not</u> be copied to the Commission. Copies may be attached to the memorandum of fact and law in support of one's arguments.

- All contested motions should be filed pursuant to the Commission's motion process (similar to Superior Court Rule 9A). **Motions failing to comply with this process will not be ruled on**. A certificate of service showing that motions were filed in accordance with the regulations and that good faith attempts to resolve the matter with opposing counsel were made **must** accompany all motions. *(804 CMR 1.05(3)(d) and (h))*.

- <u>Joint motions</u> for extensions of discovery will automatically be granted for **good cause** as long as it is submitted in writing and the time for extension does not exceed sixty (60) days. Counsel will <u>not</u> receive notice that an extension has been granted.

- Based on the Pre-Determination Discovery Order, subpoenas may be issued to depose parties in the name of the Commission by counsel for the parties. This applies to third party witnesses as well. A motion to compel must be made before a request to enforce the subpoena is made. *(804 CMR 1.14)*.

- Each party must submit a memorandum of fact and law within thirty (30) days after the close of discovery. Parties are requested to provide all opposing counsel with a copy of the Memorandum. Responses to the Memoranda will not be allowed without permission from the attorney investigator.

- Copies of our new regulations may be purchased at the Secretary of State bookstore or you can find them on our website at: www.state.ma.us/mcad

03/16/2000   MCAD-AAU