

# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
WESTERN MASSACHUSETTS DIVISION
1350 MAIN STREET
SPRINGFIELD, MASSACHUSETTS 01103-1629

TOM REILLY
ATTORNEY GENERAL

(413) 784-1240
www.ago.state.ma.us

July 9, 2003

Jane Bergenn
c/o John T. Leahy, Esq.
68 Thrasher Hill Road
P.O. Box 364
Worthington, MA 01098

**Re: Authorization for Immediate Private Suit  The Williston Northampton School**

Dear Ms. Bergenn:

    Thank you for contacting the Office of the Attorney General's Fair Labor and Business Practices Division.

    This letter is to inform you that we have carefully reviewed your complaint and have determined that the proper resolution of this matter may be through a private suit in civil court. Accordingly, we are authorizing you to pursue this matter through a civil lawsuit immediately.

    Massachusetts General Laws chapter 149, § 150, and chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws. If you elect to sue in civil court, you may bring an action on your own behalf and others similarly situated, and you may obtain injunctive relief, treble damages for any loss of wages and other benefits, as well as the costs of litigation and reasonable attorneys' fees.

    Without making a judgment on the merits of your complaint, this correspondence represents this office's written assent to sue and grants you the authority to pursue this matter against your employers immediately, as permitted by Massachusetts General Laws chapters 149 and 151. This office will not take further enforcement action at this time.

    Thank you for your attention to this matter.

Sincerely,

*[signature]*

Susan R. Decker, Inspector
Office of the Attorney General
Fair Labor and Business Practices Division

3

Case 3:04-cv-30012-MAP     Document 1-5     Filed 01/21/2004     Page 2 of 19

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
436 DWIGHT STREET, ROOM 220, SPRINGFIELD, MASSACHUSETTS 01103
(413 739-2145)

## -DISMISSAL and NOTIFICATION of RIGHTS-

DATE: 11-21-03

To: John T. Leahy, Esquire
Attorney at Law
PO BOX 364
Worthington MA 01098

Case: Bergenn v. Williston Northampton school
Docket No: 03-SEM-01837-HP/AG
EEOC No: 16CA302122
Investigator: Gilbert L. May

Your complaint is dismissed for the following reasons:

[ ]  The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[ ]  Respondent employs less than the required number of employees

[ ]  Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]  The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]  The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[ ]  The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[XX] Other (briefly state) Complainant is filing a civil action in the courts.

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

Cynthia A. Tucker
Investigating Commissioner

Date 11/21/03

cc: Claire L. Thompson, Respondent's Attorney
Doherty Wallace Pillsbury & Murphy
One Monarch Place, Suite 1900
Springfield MA 01144-1900

MEMORANDUM

TO: CASE FILE
CASE NAME: Bergenn v. Williston Northampton School
MCAD NO: 03-SEM-01837-HP/AG
EEOC NO: 16CA302122
NUMBER OF EMPLOYEES: More than 15
FROM: Gilbert L. May
RE: Dismissal and Notification of Rights
DATE OF RECOMMENDATION: November 18, 2003

ISSUE(S) INVESTIGATED:

On July 30, 2003, Complainant, a sixty (60) year old female, with a date of birth of 5-1-42, who has respiratory problems, filed a complaint with this Commission charging that Respondent subjected her to unequal terms and conditions of her employment and subsequently terminated her because of her handicap and age, in violation of M.G.L. Chapter 151B Section 4, Paragraphs 1B & 16, Age Discrimination in Employment Act and the Americans with Disabilities Act.

RECCOMMENDATION:

While the investigation was still pending, Complainant wished to withdraw her complaint as she wished to pursue a civil action in the courts. Complainant also wished to have her case with the EEOC be withdrawn.

_____
Gilbert L. May
COMPLIANCE OFFICER

_____
Migdalia Rivera
SUPERVISOR

4

5

COOLEY DICKINSON HOSPITAL, INC.
30 LOCUST ST, P.O. BOX 5001, NORTHAMPTON, MA 01061-5001
(413) 582-2000

EMERGENCY DEPARTMENT/OUTPATIENT RECORD

| | | |
|---|---|---|
| NAME: | BERGENN, JANE | ROOM: ED |
| PATIENT ADDRESS: | 116 PLEASANT STREET #30 | DISCH DATE: |
| | EASTHAMPTON, MA 01027 | |
| PATIENT PHONE#: | 000-527-2970 | REGISTRATION DATE: 11/20/2002 |
| D.O.B.: | 05/01/1942 | MEDICAL RECORD: 136356 |
| EMERGENCY PHYS: | IRA HELFAND, M.D. | ACCT: 2971898 |
| PRIMARY CARE PHYS: | CHARLES K. BRUMMER, M.D. | FCLASS: H |
| ADMITTING PHYS: | | |

S: CHIEF COMPLAINT: This is a 60 year old who presents complaining of chest pain. HISTORY OF PRESENT ILLNESS: The patient reports that for the last couple of days she has been having pain in her chest. She relates this to firing a kiln at the school where she works. She reports that the material that she is firing in the kiln has masking tape and newspaper stuffed within the center of the clay pieces, and that she has done a long slow firing. She noticed there was a discomfort in her chest she describes as an ache yesterday afternoon, while she was at work. It was better when she left the area, worse when she was back in the room where the kiln was. Today at work she developed the same symptoms again. She has felt somewhat uncomfortable in her breathing, although not actually short of breath. She felt when she was home tonight she didn't feel she had the energy to walk upstairs. She has had no cough, no fever. The patient reports that a coworker exposed to the kiln also complained of irritated eyes and throat. PAST MEDICAL HISTORY: The patient has a history of hypothyroidism and is on replacement. This is her only medication. She has no history of hypertension or diabetes. ALLERGIES: NONE. FAMILY HISTORY: No family history of coronary disease. Her mother had some kind of coronary even when she was 72. REVIEW OF SYSTEMS: Negative. SOCIAL HISTORY: She is divorced, and works as an art teacher and an artist.

O: PHYSICAL EXAM: BP is 104/49, pulse 66, respiratory rate 18, temp 36.6. The O2 sat was initially reported at 93% on room air, indicating a significant degree of hypoxia. However, when it was rechecked some time later it was 97% on room air, indicating adequate oxygenation. The sclerae are anicteric. Mucous membranes are moist. There is no adenopathy or thyromegaly. The skin is without rash. The lungs are clear, without rales or wheezes. The heart is S1, S2 and regular, without murmur. The abdomen has normal bowel sounds, is soft and nontender. The patient moves all extremities well and has no facial asymmetry. EOMs exhibit full range of motion.

Chest x-ray showed a question of some increased interstitial markings. EKG showed sinus rhythm with no ST-T wave abnormalities, and was within normal limits. Cardiac monitor showed sinus rhythm to my reading. CPK and troponin were both within normal limits. The BMP showed a calcium of 8.3, and sodium 146, and was otherwise normal. D-Dymer was normal at

```
NAME: BERGENN, JANE
MR:   136356                                              PAGE 2
ACCT: 2971898                                             ED NOTE
```

276.  CBC showed a hemoglobin of 11.1 and was otherwise normal. Carboxyhemoglobin was within normal limits as well at 0.3%.

A/P:  Chest discomfort, probably secondary to exposure to fumes from the kiln.  The patient was advised that she should not fire the kiln in its current location without some change being made to ensure that it is adequately ventilated.  She was also apprised of the increased interstitial markings on chest film, and advised that she should consult her physician for possible further follow up.  She was discharged in stable condition.

```
                    _____
                         IRA HELFAND, M.D.
This report has been electronically reviewed and approved
by IRA HELFAND, M.D. 11/24/2002.

\:  cp          /:  3090       DD: 11/21/2002   DT: 11/22/2002
              JOB: 28372       ID: 000506076

fx: CHARLES K. BRUMMER, M.D. (03140)
>
```

6

Case 3:04-cv-30012-MAP    Document 1-5    Filed 01/21/2004    Page 9 of 19


**MASSACHUSETTS GENERAL HOSPITAL**


**HARVARD MEDICAL SCHOOL**

1101 Beacon Street
Four West
Brookline, Massachusetts 02446

Tel: 617.232.1704, Fax: 617.232.3280

L. Christine Oliver, MD, MPH, MS
*Associate Physician*
*Pulmonary and Critical Care Unit*

January 24, 2003

Gloria Granfield
Director of Human Resources
The Williston Northampton School
19 Payson Avenue
Easthampton, MA   01027

RE:  Jane B. Bergenn – DOB 05/01/42, MGH Unit #404-98-01

Dear Ms. Granfield:

    I am writing with regard to Ms. Bergenn, whom I saw in my office for an evaluation on January 17, 2003. Although I have not arrived at a definite diagnosis yet, I believe, based on the information I have to date, that she has suffered respiratory tract irritation as a result of exposure to irritants in smoke from the kiln in her classroom in the Reed Center. Re-exposure to even low-level residue left in the room and/or on materials/pieces in the classroom results in precipitation of disabling symptoms of chest pain.

    In order to facilitate Ms. Bergenn's return to teaching as soon as possible, I have the following recommendations with regard to a short term solution. The first is that the sky lights be left open to the extent possible to maximize intake of fresh air. The second is that the room be cleaned up and contaminated materials removed. The third is that two air purifiers be placed in the classroom – one in the upper and one in the lower teaching areas. My recommendation is the Austin Air Purifier with HEPA and charcoal filters, available through a distributor in Buffalo, NY (716-856-3704). It is important that the filters be changed on a regular basis. These steps should be taken before Ms. Bergenn returns to teaching in that classroom. And these recommendations assume that the exhaust hood over the kiln is now operative and adequate.

    As a long term solution, I recommend that the kiln be moved to another classroom that has windows that can be opened. Such a step would improve ventilation in general and hopefully prevent a toxic exposure to teacher and students in the future.

If you have any questions, please let me know.

Very truly yours,

*[signature]*

L. Christine Oliver, MD

7


**MASSACHUSETTS GENERAL HOSPITAL**


**HARVARD MEDICAL SCHOOL**

1101 Beacon Street
Four West
Brookline, Massachusetts 02446

Tel: 617.232.1704, Fax: 617.232.3280

L. Christine Oliver, MD, MPH, MS
*Associate Physician*
*Pulmonary and Critical Care Unit*

February 17, 2003

Gloria Granfield
Director of Human Resources
The Williston Northampton School
19 Payson Avenue
Easthampton, MA- 01027

RE: Jane B. Bergenn – DOB 05/01/42, MGH Unit #404-98-01

Dear Ms. Granfield:

Attached please find a letter sent to you January 24, 2003. This letter is partially responsive to your letter to Ms. Bergenn dated February 13, 2003.

I now have a definitive diagnosis in Ms. Bergenn's case. She has asthma. It is my opinion that the development of asthma in her case was causally related to irritant (and possibly sensitizing) exposures encurred as a result of the malfunction of the kiln in her classroom at the Reed Center of the Williston Northampton School in mid-November, 2002.

Recommendations were provided in my earlier letter. Ms. Bergenn attempted to return to her classroom to teach and became ill. At that time, the recommended steps had not been fully implemented. However, given her respiratory reaction at that time, it is now my recommendation that the kiln be moved to a well-ventilated classroom. Air purifiers are recommended in addition. In my opinion, rendered with reasonable medical certainty, Ms. Bergenn is not able to return to work until this has been accomplished. And it is not certain that she will be able to resume her usual work, even under these conditions. But I am hopeful that she can.

I will review additional materials that have been forwarded to me and render a more detailed report in the near future. In the meantime, this information should be sufficient for you to file a workers' compensation claim – as you are required to do by law given the number of her related lost days from work.

If there are further questions, please let me know.

Very truly yours,

*[signature]*

L. Christine Oliver, MD

Cc: J. Bergenn

# THE WILLISTON NORTHAMPTON SCHOOL

March 31, 2003

Ms. Jane Bergenn
116 Pleasant Street
Apartment 30
Easthampton, MA  01027

RE:    Separation Agreement

Dear Jane:

The purpose of this letter is to inform you that we consider your action of leaving the classroom on March 27, 2003 as job abandonment and as a result your employment with the Williston Northampton School ("Williston") is terminated, effective immediately.

Under these conditions of job abandonment, Williston generally would not make any severance payments. Yet, in recognition of your years of employment at Williston the administration proposes to pay you 6 week(s) of severance, in exchange for a full waiver and release of all potential claims and your agreement to the following terms:

1.  Abandonment of Employment
    By your own actions, effective March 27, 2003, the employment relationship between you and Williston is terminated. You will need to remove all personal belongings from your classrooms.  Please arrange a time to do this with Gloria Granfield, Human Resources Director.
2.  Compensation and Benefits
    Williston agrees to pay you 6 week(s) severance with payment to be made on or before April 15, 2003. The payment shall be subject to all withholding taxes and customary deductions.
    You will receive notification of your right to continue your health insurance benefits under COBRA. You may do so at your own expense consistent with the requirements of COBRA.  See Exiting Benefit Information Memorandum attached hereto.
3.  No Other Payments or Benefits
    You and Williston agree that, except as expressly provided in paragraph 2 above and set forth in this Agreement and attached Exiting Benefit Memorandum, Williston shall not have any obligation to make any other payments to you or provide you with any other benefits at any time following the date of this Agreement.
4.  Return of Property
    You will need to arrange a date and time with Gloria Granfield on which you will return to Williston all property in your possession, custody or control that belongs to Williston, including without limitation, all keys, office equipment, documents, records, files, written

74708-1

materials, electronic information, credit cards bearing Williston's name or any and all other property belonging to Williston currently within your possession, custody or control.

5. <u>Confidential Information</u>

You and Williston agree that the terms of this Separation Agreement shall remain confidential and shall not be disseminated to any individual or entity either directly or indirectly at any time without the written consent of Williston. To the extent that you have acquired information, data, business practices or procedures or other information regarding Williston, of a confidential or proprietary nature, you agree not to disclose or use or otherwise make available that information at any time, for any purpose whatsoever.

6. <u>Non-disparagement</u>

You agree not to make any oral or written communication to any person or entity which has or may have the effect of damaging the reputation of, or otherwise working in any manner whatsoever to the detriment of Williston at any time following the execution of this Agreement.

7. <u>Waiver and Release</u>

In exchange for the good and valuable consideration detailed in this Agreement, you hereby waive any claim that you may have for employment or reemployment by Williston at any time in the future. You hereby release and forever discharge Williston, its trustees, officers, employees and agents (collectively, the "Released Parties") from any and all claims, demands and liabilities whatsoever of every name and nature with respect to your employment relationship with Williston and/or the terms, conditions or termination of your employment relationship with Williston, which you now have or ever had against any of the Released Parties. This release includes any claims for alleged lost wages or benefits, compensatory damages, punitive damages, equitable relief or any other forms of damages or relief. This release includes, without limitation, all common law claims, including claims in contract or tort, breach of contract, wrongful discharge (including claims for constructive discharge), intentional or negligent infliction of emotional distress, misrepresentation, invasion of privacy, interference with prospective economic advantage, interference with contractual relations, defamation, negligence, or breach of any covenant of good faith and fair dealing. You specifically release and forever discharge Williston from any and all claims based upon any allegation of unlawful employment discrimination under any federal, state or local law, regulation or ordinance. This release includes a waiver of any rights or claims that you may have or claim to have under any local, state or federal law, statute, public policy, order, ordinance, or regulation. You represent, warrant, covenant and agree that you have not and will not file any complaints or charges against Williston or any of the other Released Parties with any local, state or federal agency or court for any purpose whatsoever.

8. <u>Miscellaneous</u>

   A. You and Williston agree that this document and any matters concerning this Agreement will be regarded as privileged communication between you and Williston and you will not disseminate or release this Agreement or any such matters by publication of any sort, in any manner or means, to any person whatsoever.

74708-1

2

B. In the event that any provision of this Agreement shall be held invalid, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

C. This Agreement constitutes the entire agreement between the parties hereto and no change or modification of this Agreement shall be valid unless made in writing, signed by all parties hereto.

D. You and Williston acknowledge and agree that neither party has made any representations to the other party other than those specifically set forth in this Agreement.

E. You acknowledge and agree that you are entering into this Agreement knowingly and voluntarily and further acknowledge that you have read and understand the language of this Agreement. You further acknowledge that you have been given adequate time and opportunity to consider this Agreement prior to execution of the Agreement.

F. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

If the foregoing correctly sets forth your understanding of the terms of our Agreement, please sign this letter in the appropriate space provided below and return a fully executed copy to me. This agreement, including the severance pay, will be in effect until the close of business on April 15, 2003. If not accepted by that data and time, this agreement will be considered withdrawn.

Signed as a sealed instrument as of the date first written above.

Very truly yours,

*[signature]*

The Williston Northampton School
By Brian R. Wright

I hereby agree to the foregoing:

_____
Jane B. Bergenn

74708-1                                    3



March 31, 2003

Memorandum to:    Jane Bergenn

From:    Gloria A. Granfield, Director of Human Resources

Re:    Exiting Benefit Information

---

The following outlines your exiting benefit information. Please review it carefully and contact me directly at 413.529.3236 with any questions you may have.

*Compensation* – Your final day of employment was Thursday, March 27, 2003. You have received your normal regular compensation for the month of March on March 15, 2003. In addition, you will receive a separate check for payment for your six weeks of severance pay. All regular tax deductions will be taken from this check.

- *Health & Dental Insurance* - With all normal insurance deductions coming out of your March pay, you will be covered for both health and dental insurance through **April 30, 2003**. On **May 1, 2003**, you will be eligible for COBRA, the federally mandated insurance continuation program. You will receive all COBRA information directly, under separate cover, from our insurance brokers, BFP Associates.

- *Uninsured Medical* - Uninsured medical deductions ceased with your March check. Contact BFP Associates at 413.739.2352 to get information to submit receipts for reimbursement.

- *Life & Disability Insurance* - There is a provision for you to convert both your Life and Long Term Disability (LTD) Insurance from the group plan to an individual plan. If you are interested in pursuing this option, please call 1.800.421.0344 for LTD conversion information and 1.800.343.5406 for Life Insurance conversion information. Your school group insurance will end as of **March 27, 2001** and you have 31 days to make your conversion decision.

- *TIAA-CREF Pension* - Your TIAA-CREF contributions will be guaranteed through your March 2003 pay. Your contracts will remain intact. If you need any information regarding any benefit planning options please call the TIAA-CREF Benefit Counseling division at 1.800.842.2733.

- *Keys & Other School Property* – Arrangements will need to be made with Gloria Granfield to return all school-provided keys and any other school property. This will include all personal effects from your classroom areas as well.