UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

JANE BERGENN,
    Plaintiff

v.                                 CIVIL ACTION NO: 04-30012-MAP
**AMENDED COMPLAINT**

THE WILLISTON NORTHAMPTON
SCHOOL, AND BRIAN WRIGHT
    Defendants

## I. NATURE OF CLAIMS

1. This is an action pursuant to 29 USC Section 2601 et seq., The Family and Medical Leave Act of 1993 ("FMLA"), 42 USC Section 12101 et seq., the Americans with Disabilities Act of 1990 ("ADA"), 29 USC Sections 621 et seq. et seq., The Age Discrimination in Employment Act of 1967 ("ADEA"), MGL c. 149 Section 150 for violation of the "Payment of Wages Statute", MGL c. 151B for discrimination based on age and handicap and MGLc.151B Sections 4 and 4A for retaliation, and for retaliation in violation of the FMLA.

## II.    THE PARTIES

2. The Plaintiff, Jane Bergenn (hereafter Bergenn) is an individual who resided at 116 Pleasant Street # 30, East Hampton, MA 01027 during the events giving rise to this case. Bergenn now resides at 162 Federal Street, Greenfield, MA 01301.

3. Defendant The Williston Northampton School is a private educational institution incorporated under the laws of the Commonwealth of Massachusetts that at all times relevant maintained its principal place of business in the City of Easthampton, County of Hampshire in the Commonwealth of Massachusetts. On

information and belief at all times relevant hereto, Defendant employed more than 100 people.

4. Defendant Brian Wright is Defendant's Headmaster and Chief Executive Officer.

### III. JURISDICTION AND VENUE

5. On July 30, 2003 Plaintiff filed a charge of discrimination against Defendant Williston with the Massachusetts Commission Against Discrimination (the "MCAD"), alleging that she was discriminated against on the basis of disability and age in violation of MGL c. 151B, Title I of the Americans with Disabilities Act, 42 USCA Sections 12101 et seq. (the "ADA"), and discriminated on the basis of age in violation of the Age Discrimination in Employment Act of 1967, 29 USCA Sections 621-34 (the "ADEA"). The charge was subsequently amended to include a charge of retaliation in violation of M.G.L. c. 151B Section 4(4). Said charge was filed within 300 days of the date of Plaintiff's discharge. (A copy of said charge is attached hereto and incorporated herein by reference as Exhibit 1).

6. On July 9, 2003 Plaintiff received a letter from the Office of the Attorney General for the Commonwealth of Massachusetts authorizing her to file suit to enforce rights pursuant to MGL c. 149 and 151 "The Payment of Wages" law. A copy of the letter is attached hereto as Exhibit 2. On November 21, 2003 Plaintiff received a Notice of Dismissal so that a civil action might be filed from the MCAD. A copy of the dismissal letter is attached hereto as Exhibit 3. Plaintiff received a notice of right to sue from the EEOC dated December 12, 2003, advising her that she had 90 days to file suit against Defendant under the ADA

and ADEA. A Copy of the Right to Sue letter is attached hereto and incorporated herein by reference as Exhibit 4).

7. This action was filed within the aforementioned 90-day right to sue period.

8. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This court has original jurisdiction over this matter pursuant to 29 USCA Sections 1331; 2617; 1343(a)(4) and 42 USCA Section 12117(a)

10. Venue is proper in this district under 28 USCA Section 1391(b) as the parties reside in this judicial district and the events giving rise to this action occurred in this judicial district.

IV. FACTS RELEVANT TO ALL CLAIMS

11. On or about September 1984, Plaintiff was hired by Defendant Williston as an Art Teacher and at all relevant times hereto was employed by Defendant.

12. At all times relevant hereto, Plaintiff performed her job duties to Defendant's legitimate satisfaction.

13. From Friday, November 15, 2002 through part of Tuesday November 19, 2002 Plaintiff "fired" student head sculptures which were wrapped in newspaper and masking tape in a kiln located in her Reed Center classroom by gradually turning up the temperature in the kiln to avoid breakage.

14. The windows in Plaintiff's Reed Center classroom do not open thus the only ventilation is provided by the kiln's exhaust system, skylights and the building's central heating and air conditioning system.

15. On the afternoon of Monday, November 18, 2002 school custodian, Richard Lemelin informed Plaintiff that he had found her classroom filled with smoke at 7PM the previous Friday. Mr. Lemelin complained of irritated eyes and throat.

16. On information and belief Mr. Lemelin subsequently was absent for several weeks due to a respiratory infection.

17. On Even though Plaintiff experienced discomfort in her chest and throat she taught on Monday and Tuesday November 18 and 19, 2002.

18. On Wednesday November 20, 2002 Plaintiff continued to experience discomfort and telephoned her primary care physician Charles Brummer. She was advised to contact the fire department for the material safety data sheet information pertaining to clay, newspaper and masking tape. Upon hearing her symptoms the fire department insisted on taking Plaintiff to the emergency room at Cooley Dickinson Hospital.

19. The hospital's emergency room report was provided to Williston and is attached hereto as Exhibit 5

20. Although continuing to experience discomfort, Plaintiff continued to teach until Monday December 2, 2002 when her chest pain led her to go to Cooley Dickinson Hospital's emergency room again. The next day she saw Dr. Charles Brummer.

21. From December 2, 2002 to January 8, 2003 Plaintiff continued to work with occasional absences due to her continued symptoms. During this period she saw Dr. Bruce Meth who performed a CT scan and a pulmonary function test.

22. Williston placed Plaintiff on Family Medical Leave effective January 8, 2003. Bergenn returned to work February 4, 2003.

23. Plaintiff had worked more than 1250 hours in the 12 months preceding her medical leave.

24. On January 17, 2003 Plaintiff saw Dr. L. Christine Oliver a Harvard Medical School pulmonary specialist. Dr. Oliver wrote to Gloria Granfield, Director of Human Resources at Williston and recommended several remedial steps to improve the air quality in Plaintiff's classroom, included among them were 1) that the classroom be cleaned and that contaminated materials be removed and 2) that two Austin Air Purifers with HEPA and charcoal filters be installed. Dr. Oliver's letter warned "Re-exposure to even low-level residue left in the room and/or on materials/pieces in the classroom results in precipitation of disabling symptoms of chest pain." A copy of Dr. Oliver's January 24, 2003 letter is attached as Exhibit 6.

25. When on Tuesday, February 4, 2003 Plaintiff returned to her classroom and found that numerous porous items, which had absorbed the fumes, were still there. Although one air purifier was installed, it did not have both a HEPA and charcoal filter as recommended by Dr. Oliver. The school never hired a professional such as an industrial hygienist to assist in remediating Plaintiff's classroom and instead relied on its custodial staff.

26. On February 5, 2003 Plaintiff attended a meeting with Susan Kennedy Assistant Head, Gloria Granfield and Headmaster Brian Wright. During the meeting Mr. Wright reprimanded her for talking with students about what was going on in her classroom and he expressed concern about parent reactions and said he had a school to run and that Plaintiff could not jeopardize student admissions by talking

about the incident. Toward the close of the meeting Brian Wright made jokes in poor taste about Bergenn's symptoms and medication, which contained steroids, comparing her to jocks pumping iron in the fitness center who are on steroids.

27. On February 6, 2003 Plaintiff wrote to Headmaster Brian Wright reviewing in detail the inadequacy of the school's remedial measures, which were discussed at the meeting the day before.

28. On February 11, 2003 Plaintiff met with Gloria Granfield, Human Resources Director and the head of house keeping in Plaintiff's classroom to review the school's cleanup efforts. During the meeting Gloria Granfield referring to Plaintiff's symptoms stated, "We know in your mind this is real." During the meeting Granfield and the head of housekeeping rolled their eyes and joked about "the residue that nobody can see or smell".

29. On February 17, 2003 Dr. Oliver wrote to Defendant Gloria Granfield and stated that she had reached a definitive diagnosis, asthma. A copy of this letter is attached as Exhibit 7. Throughout this period Plaintiff's symptoms of chest pain and headaches caused her to be substantially limited in the major life activities of breathing and working.

30. Plaintiff subsequently filed a worker's compensation claim.

31. On or about March 6th or 7th, 2003 Plaintiff noticed annual contracts reappointing staff for the following academic year in faculty mailboxes. There was no contract in her mailbox. When Plaintiff returned home there was a voice mail message from Headmaster Brian Wright stating in effect "I just want you to know you

won't be receiving a contract. We're waiting to see how your health problems resolve themselves."

32. Plaintiff continued to experience symptoms while teaching until Spring break, which began March 8, 2003.

33. When classes resumed March 25, 2003 Plaintiff told Susan Kennedy Assistant Head that she was still experiencing mild chest pain while in her classroom. Ms. Kennedy responded by stating, "Jane, you've got a lot going for you as a person and as a teacher. I see you giving so much time and energy toward figuring out how to make this situation work. I can't help but wonder if it wouldn't be more advantageous for you to begin to think of other options for yourself and put the energy there."

34. On Thursday, March 27, 2003 Plaintiff taught two classes but went home due to her symptoms. She called Rob Kelly the middle school Headmaster and told him that she could not teach her afternoon class due to her recurring symptoms and he arranged for her class to be covered.

35. On Friday, March 28, 2003 Bergenn met with Susan Kennedy, Assistant Head and Gloria Granfield, Director Human Resources and presented a proposal to teach her students at a location outside of her classroom. That evening Bergenn received a telephone call from Deb Sherr, Fine Arts Department Chair informing her that the proposal was denied and stating "The administration feels the students need to have their art program in the art room. I am sure you will understand that decision."

36. Plaintiff received a letter dated March 31, 2003 informing her that she was terminated for "job abandonment", and offering her six week's pay in exchange for waving all legal claims against Williston. A copy of the letter is attached hereto as Exhibit 8.

37. At the time of her termination Plaintiff had used approximately 4 weeks of her 12 weeks of FMLA leave, had worked for Williston 19 years, was 61 years old and earned approximately $43,000 per year.

38. Plaintiff's final paycheck reflected an underpayment of $5,075. This amount was not paid until August 13, 2003, after Plaintiff filed a complaint with the Attorney General's Office

39. Younger persons earning lower salaries replaced Plaintiff.

40. The reasons for terminating Plaintiff are pretextural. The termination of Plaintiff violated one, some or all of the following laws: ADA, FMLA, ADEA, and state disability laws.

## V. DAMAGES

41. As a direct and proximate consequence of Defendants' unlawful and discriminatory employment practices and policies, Plaintiff Bergenn has suffered loss of income, including but not limited to, past and future wages, benefits, expenses, payment for COBRA, insurance, losses because of being forced to move from her apartment, and various expenses, pain and suffering, compensatory and punitive damages, all to be specified at trial.

## VI STATEMENT OF CLAIMS

### COUNT ONE- THE FAMILY AND MEDICAL LEAVE ACT

42. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

43. The willful failure of Williston to inform Bergenn of her right to medical leave under 29 USC Section 2601 et seq. when she reported off from work March 27, 2003 due to a recurrence of her symptoms is in violation of her rights under the FMLA.

COUNT TWO- THE AMERICANS WITH DISABILITIES ACT

(Regarded as Substantially Limited)

44. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

45. Defendant Williston intentionally discriminated against Plaintiff in violation of the ADA because it regarded her as disabled and because she had a record of a disability.

COUNT THREE- THE AMERICANS WITH DISABILITIES ACT

(Failure to Accommodate)

46. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

47. Because the Defendants terminated the Plaintiff without providing her with a reasonable accommodation as required by the ADA, the Defendants have violated 42 UCS Section 12112(b).

COUNT FOUR- THE AMERICANS WITH DISABILITIES ACT

(Discriminatory Discharge)

48. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

49. Because the Plaintiff was a qualified individual with a disability, and because the Defendants terminated the Plaintiff's employment due to her disability, the Defendants have discriminated against her in violation of 42 USC Section 12112(a).

### COUNT FIVE- THE AMERICANS WITH DISABIITIES ACT
### (Hostile Environment)

50. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

51. By subjecting the Plaintiff to jokes and ridicule over her physical and mental state, Williston through its agents subjected Plaintiff to a hostile work environment in violation of the ADA.

### COUNT SIX- THE ADEA

54. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

55. The Plaintiff's termination was motivated by a desire to replace her with a less costly and younger employee in violation of 29 USC Section 623(a)(1).

### COUNT SEVEN- PAYMENT OF WAGES LAW

56. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

57. Defendants Williston and Brian Wright ignored several requests to have Plaintiff's final pay corrected and she was not paid the $5,075 she was owed until

after Plaintiff filed a complaint with the Attorney General. This violated Plaintiff's rights under MGL c. 149 Section 150.

## COUNT EIGHT- MGL C 151B- Age Discrimination

58. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

59. The Plaintiff's termination was motivated by a desire to replace her with a less costly and younger employee in violation of MGL c.151B Section 4,1(B).

## COUNT NINE- MGL c.151B HANDICAP DISCRIMINATION
(Record of Disability)

60. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

63. Defendant Williston terminated Plaintiff's employment in violation of MGL c. 151B Section 4 (16). because it regarded her as disabled and because she had a record of a disability.

## COUNT NINE- MGL 151B HANDICAP DISCRIMINATION
(Failure to Accommodate)

65. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

66. Defendant Williston failed to provide Plaintiff with a reasonable accommodation as required, the Defendants have violated MGL c.151B Section 4(16)

## COUNT TEN- MGL c. 151B- HANDICAP DISCRIMINATION
(Discriminatory Discharge)

67. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

68. Because the Plaintiff was a qualified individual with a handicap, and because the Defendant terminated the Plaintiff's employment due to her disability, the Defendant has discriminated against her in violation of MGL c. 151B Section 4(16).

## COUNT ELEVEN- MGL c. 151B- HANDICAP DISCRIMINATION
### (Hostile Environment)

69. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

70. By subjecting the Plaintiff to jokes and ridicule over her physical and mental state, Williston through its agents subjected Plaintiff to a hostile work environment in violation of MGLc.151B.

## COUNT TWELVE- RETALIATION (MGL c. 151B)

71. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

72. Defendants Williston and Brian Wright failed to offer her an employment contract for the 2004 academic year and engaged in other conduct in retaliation for her efforts to end Defendant's discrimination based on her handicap in violation of MGL c. 151B Sections 4 and 4A.

## COUNT THIRTEEN- RETALIATION (FMLA)

73. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41

74. On or about March 31, 2003 Williston by its agent Brian Wright willfully terminated Bergenn's employment in retaliation for taking necessary medical leave, in violation of the FMLA

VII     INJUNCTIVE RELIEF

75. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 41. In addition, Plaintiff alleges that defendants' discriminatory actions herein must be enjoined by this Court in order to force the defendants to comply with law. It is suggested that the injunction be specific in enjoining defendant Williston and its employees, agents and representatives.

76. Reinstate Plaintiff will full restoration of all rights, seniority, benefits with acknowledgment and accommodation of her disability.

77. That this Court retain jurisdiction to make sure defendant Williston is complying with the law.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against defendants as follows:

     A. For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to damages;

     B. For a money judgment representing punitive damages for defendant's willful violations of law;

     C. For a money judgment representing prejudgment interest, if applicable;

D. Reinstatement and restoration of benefits for Plaintiff;

E. That this Court retain jurisdiction over this action until defendant Williston to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable statutory provisions.

F. For lost monies and damages pertaining to out-of-pocket expenses, especially related to, but not limited to, insurance payments for COBRA, those damages for being forced to move;

G. For costs of suit, including an award of reasonable attorney's fees, expert fees; and

H. For such other and further relief as may be just and proper.

VII    DEMAND FOR JURY TRIAL

78. Pursuant to Rules 38(b) and 38(c) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims so triable.

Respectfully Submitted
Jane Bergenn
By her attorney

Dated: Thursday, January 29, 2004

John T. Leahy
P.O. Box 364
Worthington, MA 01098
(413) 238-0223
Fax (413) 238-0224
BBO#562352