Friday, March 14, 2003 8:53:29 AM

Message

From:      Jane Bergenn

Subject:   Current Health Status and Questions

To:        Gloria Granfield

Cc:        Brian Wright

I'm wanting to touch base with you regarding my current status of healing. In addition to taking my asthma medication, as prescribed by Dr. Oliver, for the past several days in hopes of speeding up my healing process I have been working with alternative health care and following a daily regime of serious body cleansing/detoxification. I feel this is helping me to return to my previous state of health (prior to the Nov. 15-20 kiln-firing). I intend to continue this detox for the rest of this vacation in hopes that this will enable me to be in my classroom upon return without the chest pain and headache I was experiencing for the two weeks prior to spring break.

Every time I've attempted to return to my classroom I've had minimal symptoms at first that progrssively escalated until I've had chest pain and headache that took several days to go away. When I spoke with Dr. Oliver on March 6 she stressed that I should not use the medicine to allow me to go into situations of exposure to lung irritants. Dr. Olive also reported that my March 4 pulmonary tests at Mass General Hospita lcontinued to diagnose for asthma with no significant improvement in my condition. Dr. Oliver said that I should stay away from exposures that are aggravating the imflammation of my airways or run the risk of developing multiple chemical sensitivities. This is upsetting to me. My desire is to continue to teach at Williston, (it felt great to be back with my students) yet I cannot jeopardize my health.

I'm still wondering if it is a matter of my body needing the necessary time to heal from the the initial exposure or if prompt attention to certain details, on the part of the school, could have made the difference in my capacity to function in my classroom. A few "loose ends" are :
the classroom walls and ceiling have not been sealed since the kiln incident,
the kiln has not been removed as Dr. Oliver requested,
the recommended AUSTIN air purifiers were never purchased, and
it took until late February for the process of cleaning and removal of exposed items to be complete.
Also, I'm wondering if the school has ever had an industrial hygenist examine the ventilation system in the Reed Center? While Jeff Tannatt has explained how the duct system works to bring in fresh air into the building, I, nevertheless, have continued to feel the need to get outside when I have my distressing symptoms. Please let me know if and when any investigation might have occured and any results obtained.
Thank you, Gloria, for your attention to these concerns.
I assure you I am doing everything in my power to facilitate my healing and will stay in touch with you about that.

RGL   DIS   ...   JINA

☐ EPA
☐ EEOC

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

_____ M.C.A.D. _____ and EEOC
(State or local Agency, if any)

NAME (Indicate Mr., Ms., or Mrs.)
Jane Bergenn

HOME TELEPHONE NO. (Include Area Code)
413-529-2572

STREET ADDRESS
116 Pleasant St. #11, Easthampton, MA 01027

CITY, STATE AND ZIP CODE

COUNTY
Hampshire

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME
Williston Northampton School

NO. OF EMPLOYEES/MEMBERS
100+

TELEPHONE NUMBER (Include Area Code)
413-529-3000

STREET ADDRESS
19 Payson Ave, Northampton MA 01027

CITY, STATE AND ZIP CODE

NAME
Gloria Granfield - HR - Dept.

TELEPHONE NUMBER (Include Area Code)

STREET ADDRESS

CITY, STATE AND ZIP CODE

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ AGE   ☒ RETALIATION   ☐ OTHER(Specify)

DATE MOST RECENT OR CONTINUING DISCRMINATION TOOK PLACE (Month, day, year)
7·23·03

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

( See Attached )

☒ I also want this charge filed with the EEOC.
I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)
Expires 10/25/2011

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Jane Bergenn

SIGNATURE OF COMPLAINANT
Jane Berger

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
1/8/2003

Jane Bergenn –and- The Williston Northampton School, cond't

(See, MCAD charge docketed July 8, 2003)

1. I was terminated from my position as an art teacher March 31, 2003 after 19 years with Williston.

2. On April 18, 2003 my attorney wrote to Gloria Granfield in Respondent's human resources department requesting that I be reinstated and setting out several legal claims that could be lodged against the School including violation of M.G.L.A. c. 151B.

3. In conversations after this with Rob Kelly, middle school director, I was informed that I was not permitted to enter school property because in the words of Brian Wright, school headmaster, "I had a lawsuit against the School."

4. Deprived of the opportunity to attend graduation on May 31, 2003,even as a spectator, and to see former colleagues or students to explain why I would not be returning in the fall, I wrote the attached letter

5. My attorney received the attached reply from the School's attorney dated July 23, 2003.stating in pertinent part: . . . Williston will consider instituting a counterclaim or separate action against Ms. Bergenn for any and all damages incurred by the school as a result of Ms. Bergenn's defamatory comments and/or in interfering with the school's advantageous and economic relations . . "

Conclusion

I believe the above acts constitute unlawful discrimination in violation of M.G.L.A. c.151B Sec. 4(4).

Dear Former Colleagues,

It is with sadness that I am writing to all of you to say goodbye and to bring closure to what has been, for me, a physically and emotionally stressful school year. To address you as "former colleagues" sounds odd to my ear, but I have not been a Williston employee since late March when I was fired. My difficulties with the administration of the school began last November when, after doing a bisque firing of students' sculptures in my classroom studio in the Reed Center, I began to experience chest pains and burning sensations in my throat. Other debilitating symptoms followed. Under orders from my doctor, I was admitted to the emergency room at Cooley-Dickinson Hospital in Northampton and advised to see a pulmonary specialist.

I will spare you the gory details of my story. Very simply, I was eventually diagnosed as having *occupational asthma*. The pulmonary specialist saw my illness as causally related to irritants and sensitizers released into the air by a malfunction of the exhaust hood of the kiln in my classroom. I was unable to function as usual in my classroom due to recurring disabling symptoms. On March 27 I conducted my two drawing classes. By the beginning of the second class I felt sick (headache, chest pain and nausea) but continued to teach so that both classes would have equal information. I went home after the second class and called Rob Kelley. I explained that I was sick, and he said that he would arrange coverage for my afternoon class. On March 28, in a meeting with Susan Kennedy and Gloria Granfield, I proposed teaching a bookmaking project that could be accomplished outside of my classroom. They said they would present my proposal that afternoon at an administrative meeting. That evening I received a phone call from Deb Sherr telling me that my book idea was not approved. Two days later I received a "separation agreement" which terminated me for "job abandonment."

At this time I want all of you to know that I never abandoned my job. I have loved my students and my professional life at Williston for the past 19 years. I repeatedly attempted to return to my classroom. My doctor made it clear to me and to the administration that this would only exacerbate my symptoms unless the room was properly cleaned. My request for a temporary classroom set-up in another building was summarily dismissed by administration; requests for more adequate ventilation and for an evaluation of the system by an industrial hygienist were deemed unnecessary.

Given the ramifications these events have had on my personal and professional life, I am currently working with legal counsel in an attempt to settle this matter fairly. I have had to give up my apartment and community at Eastworks, and I have no idea if I will be able to find employment as an Art Teacher at age 61.

My heartfelt thanks to all of you who have been there with encouragement, compassion, support and rollicking good humor over the years. I will miss you.

Most Sincerely,

*Jane*

Jane Bergenn

THE COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE ATTORNEY GENERAL
WESTERN MASSACHUSETTS DIVISION
1350 MAIN STREET
SPRINGFIELD, MASSACHUSETTS 01103-1629

TOM REILLY
ATTORNEY GENERAL

(413) 784-1240
www.ago.state.ma.us

July 9, 2003

Jane Bergenn
c/o John T. Leahy, Esq.
68 Thrasher Hill Road
P.O. Box 364
Worthington, MA 01098

Re:  Authorization for Immediate Private Suit   The Williston Northampton School

**3**

Dear Ms. Bergenn:

Thank you for contacting the Office of the Attorney General's Fair Labor and Business Practices Division.

This letter is to inform you that we have carefully reviewed your complaint and have determined that the proper resolution of this matter may be through a private suit in civil court. Accordingly, we are authorizing you to pursue this matter through a civil lawsuit immediately.

Massachusetts General Laws chapter 149, § 150, and chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws.  If you elect to sue in civil court, you may bring an action on your own behalf and others similarly situated, and you may obtain injunctive relief, treble damages for any loss of wages and other benefits, as well as the costs of litigation and reasonable attorneys' fees.

Without making a judgment on the merits of your complaint, this correspondence represents this office's written assent to sue and grants you the authority to pursue this matter against your employers immediately, as permitted by Massachusetts General Laws chapters 149 and 151.  This office will not take further enforcement action at this time.

Thank you for your attention to this matter.

Sincerely,

Susan R. Decker, Inspector
Office of the Attorney General
Fair Labor and Business Practices Division

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
436 DWIGHT STREET, ROOM 220, SPRINGFIELD, MASSACHUSETTS 01103
(413 739-2145)

## -DISMISSAL and NOTIFICATION of RIGHTS-

To: John T. Leahy, Esquire
Attorney at Law
PO BOX 364
Worthington MA 01098

DATE:  **11-21-03**

Case: Bergenn v. Williston Northampton school
Docket No: 03-SEM-01837-HP/AG
EEOC No: 16CA302122
Investigator: Gilbert L. May

Your complaint is dismissed for the following reasons:

[  ]  The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[  ]  Respondent  employs less than the required number of employees

[  ]  Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file.  Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint.  You have had more than 30 days in which to respond to our written request.

[  ]  The Commission's efforts to locate you have been unsuccessful.  You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ]  The Respondent has made a reasonable settlement,  offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[  ]  The Commission issues the following determination.  Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes.  This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[XX] Other (briefly state)  Complainant is filing a civil action in the courts _____.

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

Cynthia A. Tucker
Investigating Commissioner

Date  11/21/03

cc:  Claire L. Thompson, Respondent's Attorney
Doherty Wallace Pillsbury & Murphy
One Monarch Place, Suite 1900
Springfield MA 01144-1900

MEMORANDUM


TO:    CASE FILE
CASE NAME: Bergenn v. Williston Northampton School
MCAD NO:  03-SEM-01837-HP/AG
EEOC NO: 16CA302122
NUMBER OF EMPLOYEES: More than 15
FROM:   Gilbert L. May
RE: Dismissal and Notification of Rights
DATE OF RECOMMENDATION: November 18, 2003


ISSUE(S) INVESTIGATED:

On July 30, 2003, Complainant, a sixty (60) year old female, with a date of birth of 5-1-42, who has respiratory problems, filed a complaint with this Commission charging that Respondent subjected her to unequal terms and conditions of her employment and subsequently terminated her because of her handicap and age, in violation of M.G.L. Chapter 151B Section 4, Paragraphs 1B & 16, Age Discrimination in Employment Act and the Americans with Disabilities Act.


RECCOMMENDATION:

While the investigation was still pending, Complainant wished to withdraw her complaint as she wished to pursue a civil action in the courts. Complainant also wished to have her case with the EEOC be withdrawn.


Gilbert L. May
COMPLIANCE OFFICER

Migdalia Rivera
SUPERVISOR

4

5

COOLEY DICKINSON HOSPITAL, INC.
30 LOCUST ST, P.O. BOX 5001, NORTHAMPTON, MA 01061-5001
(413) 582-2000

## EMERGENCY DEPARTMENT/OUTPATIENT RECORD

NAME:
PATIENT ADDRESS: BERGENN, JANE
116 PLEASANT STREET #30                    ROOM: ED
EASTHAMPTON, MA 01027                       DISCH DATE:

PATIENT PHONE#:  000-527-2970
D.O.B.:  05/01/1942                  REGISTRATION DATE: 11/20/2002
EMERGENCY PHYS:  IRA HELFAND, M.D.   MEDICAL RECORD: 136356
PRIMARY CARE PHYS:  CHARLES K. BRUMMER, M.D.   ACCT: 2971898
ADMITTING PHYS:                                FCLASS: F

---

S:  CHIEF COMPLAINT:  This is a 60 year old who presents complaining of chest pain.  HISTORY OF PRESENT ILLNESS:  The patient reports that for the last couple of days she has been having pain in her chest.  She relates this to firing a kiln at the school where she works.  She reports that the material that she is firing in the kiln has masking tape and newspaper stuffed within the center of the clay pieces, and that she has done a long slow firing.  She noticed there was a discomfort in her chest she describes as an ache yesterday afternoon while she was at work.  It was better when she left the area, worse when she was back in the room where the kiln was.  Today at work she developed the same symptoms again.  She has felt somewhat uncomfortable in her breathing, although not actually short of breath.  She felt when she was home tonight she didn't feel she had the energy to walk upstairs.  She has had no cough, no fever.  The patient reports that a coworker exposed to the kiln also complained of irritated eyes and throat.  PAST MEDICAL HISTORY:  The patient has a history of hypothyroidism and is on replacement.  This is her only medication.  has no history of hypertension or diabetes.  ALLERGIES:  NONE.  FAMILY HISTORY:  No family history of coronary disease.  Her mother had some kind of coronary even when she was 72.  REVIEW OF SYSTEMS:  Negative.  SOCIAL HISTORY:  She is divorced, and works as an art teacher and an artist.

O: PHYSICAL EXAM:  BP is 104/49, pulse 66, respiratory rate 18, temp 36.6.  The O2 sat was initially reported at 93% on room air, indicating a significant degree of hypoxia.  However, when it was rechecked some time later it was 97% on room air, indicating adequate oxygenation.  The sclerae are anicteric.  Mucous membranes are moist.  There is no adenopathy or thyromegaly.  The skin is without rash.  The lungs are clear, without rales or wheezes.  The heart is S1, S2 and regular, without murmur.  The abdomen has normal bowel sounds, is soft and nontender.  The patient moves all extremities well and has no facial asymmetry.  EOMs exhibit full range of motion.

Chest x-ray showed a question of some increased interstitial markings.  EKG showed sinus rhythm with no ST-T wave abnormalities, and was within normal limits.  Cardiac monitor showed sinus rhythm to my reading.  CPK and troponin were both within normal limits.  The BMP showed a calcium of 8.3, and sodium 146, and was otherwise normal.  D-Dymer was normal at

NAME: BERGENN, JANE
MR:    136356
ACCT: 2971898

PAGE 2
ED NOTE

276.   CBC showed a hemoglobin of 11.1 and was otherwise normal.
Carboxyhemoglobin was within normal limits as well at 0.3%.

A/P:  Chest discomfort, probably secondary to exposure to fumes from the
kiln.  The patient was advised that she should not fire the kiln in its
current location without some change being made to ensure that it is
adequately ventilated.  She was also apprised of the increased
interstitial markings on chest film, and advised that she should consult
her physician for possible further follow up.  She was discharged in
stable condition.

                              IRA HELFAND, M.D.
This report has been electronically reviewed and approved
by IRA HELFAND, M.D. 11/24/2002.

\:  cp          /:  3090      DD: 11/21/2002
            JOB: 28372        ID: 000506076    DT: 11/22/2002

fx: CHARLES K. BRUMMER, M.D. (03140)
>

6

MASSACHUSETTS
GENERAL HOSPITAL


HARVARD
MEDICAL SCHOOL

1101 Beacon Street
Four West
Brookline, Massachusetts 02446
Tel: 617.232.1704, Fax: 617.232.3280

L. Christine Oliver, MD, MPH, MS
*Associate Physician*
*Pulmonary and Critical Care Unit*

January 24, 2003

Gloria Granfield
Director of Human Resources
The Williston Northampton School
19 Payson Avenue
Easthampton, MA   01027

RE:  Jane B. Bergenn -- DOB 05/01/42, MGH Unit #404-98-01

Dear Ms. Granfield:

I am writing with regard to Ms. Bergenn, whom I saw in my office for an evaluation on January 17, 2003.  Although I have not arrived at a definite diagnosis yet, I believe, based on the information I have to date, that she has suffered respiratory tract irritation as a result of exposure to irritants in smoke from the kiln in her classroom in the Reed Center.  Re-exposure to even low-level residue left in the room and/or on materials/pieces in the classroom results in precipitation of disabling symptoms of chest pain.

In order to facilitate Ms. Bergenn's return to teaching as soon as possible, I have the following recommendations with regard to a short term solution.  The first is that the sky lights be left open to the extent possible to maximize intake of fresh air.  The second is that the room be cleaned up and contaminated materials removed.  The third is that two air purifiers be placed in the classroom – one in the upper and one in the lower teaching areas.  My recommendation is the Austin Air Purifier with HEPA and charcoal filters, available through a distributor in Buffalo, NY (716-856-3704).  It is important that the filters be changed on a regular basis.  These steps should be taken before Ms. Bergenn returns to teaching in that classroom.  And these recommendations assume that the exhaust hood over the kiln is now operative and adequate.

As a long term solution, I recommend that the kiln be moved to another classroom that has windows that can be opened.  Such a step would improve ventilation in general and hopefully prevent a toxic exposure to teacher and students in the future.

If you have any questions, please let me know.

Very truly yours,

L. Christine Oliver, MD

**7**



**MASSACHUSETTS**
**GENERAL HOSPITAL**

**HARVARD**
**MEDICAL SCHOOL**

1101 Beacon Street
Four West
Brookline, Massachusetts 02446
Tel: 617.232.1704, Fax: 617.232.3280

J.A.Christine Oliver, MD, MPH, MS
*Associate Physician*
*Pulmonary and Critical Care Unit*

February 17, 2003

Gloria Granfield
Director of Human Resources
The Williston Northampton School
19 Payson Avenue
Easthampton, MA- 01027

RE:  Jane B. Bergenn – DOB 05/01/42, MGH Unit #404-98-01

Dear Ms. Granfield:

Attached please find a letter sent to you January 24, 2003.  This letter is partially responsive to your letter to Ms. Bergenn dated February 13, 2003.

I now have a definitive diagnosis in Ms. Bergenn's case.  She has asthma.  It is my opinion that the development of asthma in her case was causally related to irritant (and possibly sensitizing) exposures encurred as a result of the malfunction of the kiln in her classroom at the Reed Center of the Williston Northampton School in mid-November, 2002.

Recommendations were provided in my earlier letter.  Ms. Bergenn attempted to return to her classroom to teach and became ill.  At that time, the recommended steps had not been fully implemented.  However, given her respiratory reaction at that time, it is now my recommendation that the kiln be moved to a well-ventilated classroom.  Air purifiers are recommended in addition.  In my opinion, rendered with reasonable medical certainty, Ms. Bergenn is not able to return to work until this has been accomplished.  And it is not certain that she will be able to resume her usual work, even under these conditions.  But I am hopeful that she can.

I will review additional materials that have been forwarded to me and render a more detailed report in the near future.  In the meantime, this information should be sufficient for you to file a workers' compensation claim – as you are required to do by law given the number of her related lost days from work.

If there are further questions, please let me know.

Very truly yours,

L. Christine Oliver, MD

Cc: J. Bergenn

## THE WILLISTON NORTHAMPTON SCHOOL

March 31, 2003

Ms. Jane Bergenn
116 Pleasant Street
Apartment 30
Easthampton, MA  01027

RE:    Separation Agreement

Dear Jane:

The purpose of this letter is to inform you that we consider your action of leaving the classroom on March 27, 2003 as job abandonment and as a result your employment with the Williston Northampton School ("Williston") is terminated, effective immediately.

Under these conditions of job abandonment, Williston generally would not make any severance payments. Yet, in recognition of your years of employment at Williston the administration proposes to pay you 6 week(s) of severance, in exchange for a full waiver and release of all potential claims and your agreement to the following terms:

1.    <u>Abandonment of Employment</u>
      By your own actions, effective March 27, 2003, the employment relationship between you and Williston is terminated. You will need to remove all personal belongings from your classrooms.  Please arrange a time to do this with Gloria Granfield, Human Resources Director.

2.    <u>Compensation and Benefits</u>
      Williston agrees to pay you 6 week(s) severance with payment to be made on or before April 15, 2003. The payment shall be subject to all withholding taxes and customary deductions.
      You will receive notification of your right to continue your health insurance benefits under COBRA.  You may do so at your own expense consistent with the requirements of COBRA.  See Exiting Benefit Information Memorandum attached hereto.

3.    <u>No Other Payments or Benefits</u>
      You and Williston agree that, except as expressly provided in paragraph 2 above and set forth in this Agreement and attached Exiting Benefit Memorandum, Williston shall not have any obligation to make any other payments to you or provide you with any other benefits at any time following the date of this Agreement.

4.    <u>Return of Property</u>
      You will need to arrange a date and time with Gloria Granfield on which you will return to Williston all property in your possession, custody or control that belongs to Williston, including without limitation, all keys, office equipment, documents, records, files, written

74708-1

materials, electronic information, credit cards bearing Williston's name or any and all other property belonging to Williston currently within your possession, custody or control.

5.   Confidential Information
You and Williston agree that the terms of this Separation Agreement shall remain confidential and shall not be disseminated to any individual or entity either directly or indirectly at any time without the written consent of Williston.  To the extent that you have acquired information, data, business practices or procedures or other information regarding Williston, of a confidential or proprietary nature, you agree not to disclose or use or otherwise make available that information at any time, for any purpose whatsoever.

6.   Non-disparagement
You agree not to make any oral or written communication to any person or entity which has or may have the effect of damaging the reputation of, or otherwise working in any manner whatsoever to the detriment of Williston at any time following the execution of this Agreement.

7.   Waiver and Release
In exchange for the good and valuable consideration detailed in this Agreement, you hereby waive any claim that you may have for employment or reemployment by Williston at any time in the future.  You hereby release and forever discharge Williston, its trustees, officers, employees and agents (collectively, the "Released Parties") from any and all claims, demands and liabilities whatsoever of every name and nature with respect to your employment relationship with Williston and/or the terms, conditions or termination of your employment relationship with Williston, which you now have or ever had against any of the Released Parties.  This release includes any claims for alleged lost wages or benefits, compensatory damages, punitive damages, equitable relief or any other forms of damages or relief.  This release includes, without limitation, all common law claims, including claims in contract or tort, breach of contract, wrongful discharge (including claims for constructive discharge), intentional or negligent infliction of emotional distress, misrepresentation, invasion of privacy, interference with prospective economic advantage, interference with contractual relations, defamation, negligence, or breach of any covenant of good faith and fair dealing. You specifically release and forever discharge Williston from any and all claims based upon any allegation of unlawful employment discrimination under any federal, state or local law, regulation or ordinance.  This release includes a waiver of any rights or claims that you may have or claim to have under any local, state or federal law, statute, public policy, order, ordinance, or regulation.  You represent, warrant, covenant and agree that you have not and will not file any complaints or charges against Williston or any of the other Released Parties with any local, state or federal agency or court for any purpose whatsoever.

8.   Miscellaneous
   A.   You and Williston agree that this document and any matters concerning this Agreement will be regarded as privileged communication between you and Williston and you will not disseminate or release this Agreement or any such matters by publication of any sort, in any manner or means, to any person whatsoever.

B.  In the event that any provision of this Agreement shall be held invalid, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

C.  This Agreement constitutes the entire agreement between the parties hereto and no change or modification of this Agreement shall be valid unless made in writing, signed by all parties hereto.

D.  You and Williston acknowledge and agree that neither party has made any representations to the other party other than those specifically set forth in this Agreement.

E.  You acknowledge and agree that you are entering into this Agreement knowingly and voluntarily and further acknowledge that you have read and understand the language of this Agreement.  You further acknowledge that you have been given adequate time and opportunity to consider this Agreement prior to execution of the Agreement.

F.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

If the foregoing correctly sets forth your understanding of the terms of our Agreement, please sign this letter in the appropriate space provided below and return a fully executed copy to me.  This agreement, including the severance pay, will be in effect until the close of business on April 15, 2003.  If not accepted by that data and time, this agreement will be considered withdrawn.

Signed as a sealed instrument as of the date first written above.

Very truly yours,

The Williston Northampton School
By Brian R. Wright

I hereby agree to the foregoing:

_____

Jane B. Bergenn



March 31, 2003

**Memorandum to:**     Jane Bergenn

**From:**     Gloria A. Granfield, Director of Human Resources

**Re:**     Exiting Benefit Information

The following outlines your exiting benefit information. Please review it carefully and contact me directly at 413.529.3236 with any questions you may have.

*Compensation* – Your final day of employment was Thursday, March 27, 2003. You have received your normal regular compensation for the month of March on March 15, 2003. In addition, you will receive a separate check for payment for your six weeks of severance pay. All regular tax deductions will be taken from this check.

- *Health & Dental Insurance* - With all normal insurance deductions coming out of your March pay, you will be covered for both health and dental insurance through **April 30, 2003**. On **May 1, 2003**, you will be eligible for COBRA, the federally mandated insurance continuation program. You will receive all COBRA information directly, under separate cover, from our insurance brokers, BFP Associates.

- *Uninsured Medical* - Uninsured medical deductions ceased with your March check. Contact BFP Associates at 413.739.2352 to get information to submit receipts for reimbursement.

- *Life & Disability Insurance* - There is a provision for you to convert both your Life and Long Term Disability (LTD) Insurance from the group plan to an individual plan. If you are interested in pursuing this option, please call 1.800.421.0344 for LTD conversion information and 1.800.343.5406 for Life Insurance conversion information. Your school group insurance will end as of **March 27, 2001** and you have 31 days to make your conversion decision.

- *TIAA-CREF Pension* - Your TIAA-CREF contributions will be guaranteed through your March 2003 pay. Your contracts will remain intact. If you need any information regarding any benefit planning options please call the TIAA-CREF Benefit Counseling division at 1.800.842.2733.

- *Keys & Other School Property* – Arrangements will need to be made with Gloria Granfield to return all school-provided keys and any other school property. This will include all personal effects from your classroom areas as well.